UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| RICHARD L. SKAGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 4:09-cv-0166-SEB-WGH |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Richard L. Skaggs ("Skaggs") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. Background**

Skaggs applied for DIB on October 3, 2007, alleging an onset date of November 30, 2004. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on November 17, 2008. Skaggs was present, accompanied by his attorney. Medical and other records were introduced into evidence. Skaggs and a vocational expert testified. The ALJ denied Skaggs' application on February 3, 2009. On October 28, 2009, the Appeals Council denied Skaggs' request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Skaggs last met the insured status requirements of the Act on December 31, 2005; (2) Skaggs did not engage in substantial gainful activity during the period from his alleged onset date of November 30, 2004, through his date last insured of December 31, 2005; (3) through the date last insured, Skaggs had a severe impairment, degenerative disc disease; (4) through the date last insured, Skaggs did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) through the date last insured, Skaggs had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except he could perform occasional postural activity; (6) through the date last insured, Skaggs was unable to perform any past relevant work; (7) Skaggs was born on June 4, 1959, and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured; (8) Skaggs had at least a high school education and was able to communicate in English; (9) the vocational expert identified no transferable job skills; and (10) through the date last insured, considering Skaggs' age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Skaggs was not under a "disability," as defined in the Act, at any time from November 30, 2004, the alleged onset date, through December 31, 2005, the date last insured.

## II.  Discussion

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

2

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Skaggs had a severe impairment consisting of degenerative disc disease, there were a significant number of jobs in the national economy that he could perform. The ALJ determined that through the date he was last insured, Skaggs could perform light work, except he could perform occasional postural activity. (R. at 18).

*New Evidence*

The court first considers the issues presented by the submission of additional evidence. Skaggs has presented nine pages of additional records. Two of the documents, dated March 10, 2004, contrary to Skaggs' assertion, were already part of the record and were considered by the ALJ. (R. at 16, 461-62). The additional seven pages are records from November 2009, December 2009, and April 23, 2010. A reviewing court may order that a case be remanded to the Commissioner to consider additional evidence upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). This is known as a "sentence six remand."

To satisfy the elements of a sentence six remand, the tendered evidence must be new and material and there must be good cause for the claimant's failure to present it to the ALJ. *Richmond v. Chater*, 94 F.3d 263, 268 (7th Cir.1996) (a court may order such a remand when a claimant presents new, material evidence which, for good cause, he could not have presented earlier). "New" evidence did not exist or was unavailable to the claimant at the time of the hearing. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). "To be material, the evidence must 'relate to the claimant's condition during the relevant time period encompassed by the disability application under review.'" *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999) (quoting *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)). In addition, such evidence is "material" if there is a reasonable probability that it would have changed the outcome of the claimant's hearing. *Schmidt,* 395 F.3d at 742.

Skaggs has failed to explain why he believes the court should consider the additional evidence on judicial review. Nonetheless, the court has considered the elements of a sentence six remand and finds that the tendered evidence is not material. The "new" evidence does not relate to Skaggs' condition during the relevant time under review, meaning prior to December 31, 2005. In addition, because the evidence does not relate to the appropriate time period, there is no reasonable probability that it would have changed the ALJ's decision. Accordingly, the court will not consider the evidence tendered with Skaggs' brief and it does not warrant a remand under sentence six.

*Skaggs' Claims for Sentence Four Remand*

As noted above, of greatest significance in this case is the fact that Skaggs' last date insured was December 31, 2005. He must therefore establish disability on or prior to that date.

Skaggs argues that the ALJ's decision is not supported by substantial evidence. In particular, he contends that the ALJ failed to give proper weight to the opinions of treating physicians. In addition, he asserts that the ALJ failed to properly evaluate his subjective complaints of pain.

Skaggs complains that the ALJ "wholly failed to provide any detailed explanation whatsoever as to why he rejected medical opinion evidence from a long time treating source." Skaggs fails to articulate what specific evidence was allegedly discounted without explanation. Assuming Skaggs is referring to opinions rendered by treating physician Dr. Grief, it is unclear on what evidence Skaggs relies. The ALJ did, in fact, discuss the July 2005 and September 2005 examinations by Dr. Grief. (R. at 16). The ALJ noted that a CT of the lumbar spine in July 2005 suggested disc herniation at L4-5 and disc bulging at L5-S1. *Id.* The ALJ also noted that in July 2005, Dr. Grief observed positive straight leg raise, but that in September 2005, he noted negative straight leg raise. *Id.* The ALJ observed that although a CT suggested disc herniation, Skaggs received no specialized treatment and was seen infrequently over the next year and a half. (R. at 18). The ALJ further noted that Skaggs saw Dr. Grief infrequently during the next two years. (R. at 16, 19).

The court disagrees with Skaggs' contention that the ALJ failed to explain his basis for rejecting Dr. Grief's opinion that Skaggs was totally disabled. On the contrary, the ALJ considered the opinions of Dr. Grief, noting that Dr. Grief had assessed in several reports that Skaggs had been totally disabled due to back pain since as early as May 2005. (R. at 19). The ALJ explained that he afforded "little weight" to Dr. Grief's "unsupported reports" because "they are not well-supported by the objective medical record." (R. at 19-20). The ALJ stated that Skaggs had received "limited treatment by Dr. Grief for back pain." (R. at 20). The ALJ noted that Dr. Grief saw Skaggs for back pain in July 2005, when Skaggs reported that his back had bothered him for the past 2 months. *Id.* The ALJ acknowledged that Dr. Grief had obtained CT testing that showed L4-5 disc herniation and a diagnosis of sciatica, but that Dr. Grief also observed preserved motor strength and no obvious sciatica on return visits. *Id.* The ALJ pointed out that Dr. Grief noted negative straight leg raise on

4

follow-up in November 2005 and normal x-rays of the knees and hips. *Id.* The ALJ observed that Skaggs reported no specific back pain complaints on exam in November 2005 or in two follow-up exams with Dr. Grief in 2006. *Id.* The ALJ concluded that "[t]hus, Dr. Grief's own records far from support his conclusion that the claimant was disabled by back pain." *Id.* "He did not refer the claimant to a specialist and the claimant has testified that he took no regular pain medication and he did not receive therapy or other alternative treatment prior to his date last insured." *Id.*

The ALJ accepted that Skaggs had progressive back pain, that he saw a specialist later in January 2007, and that Skaggs received subsequent pain injections and underwent lumbar fusion surgery in February 2008, but this all occurred well after Skaggs' date last insured. (R. at 20). On the other end of the spectrum, the ALJ rejected the State agency medical experts' finding that Skaggs had no severe back impairment prior to his date last insured. *Id.* The ALJ concluded that the record as a whole supported a finding that Skaggs had a progressive back impairment, but that he could perform light work with occasional postural activity. *Id.*

In support of his claims, Skaggs relies in large part on case law from circuits other than the Seventh Circuit Court of Appeals. To be clear, under Seventh Circuit law, "[a] treating physician's opinion concerning the nature and severity of a claimant's injuries receives controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'consistent with substantial evidence in the record.'" *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). "The treating physician's opinion is important because that doctor has been able to observe the claimant over an extended period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus too quickly find[s] disability." *Id.* (internal quotation omitted). "Accordingly, if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it." *Id.* "[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). *See also Hofslien v. Barnhart*, 439 F.3d 375, 376-77 (7th Cir. 2006) (clarifying "treating physician rule" and noting that it can be proper to give opinion of non-examining physician greater weight than that of treating physician).

The ALJ discussed the opinions of treating physician Dr. Grief and noted inconsistencies with the physician's treatment, notes and objective findings. The ALJ's reasoning is supported by substantial evidence. Substantial evidence supports the ALJ's finding that *at the time relevant to Skaggs' date last insured*, the medical record indicated that Skaggs' back impairment was not severe enough to warrant a finding of disabled, as defined under the Act.

Skaggs next argues that the ALJ failed to give proper weight to his subjective complaints of pain. Skaggs argues that the ALJ failed to explain in detail how he arrived at his conclusions with respect to Skaggs' testimony. Skaggs points out that he testified that

5

in 2005 he would mostly lay down and he would walk a little bit to get some exercise. (R. at 186). Skaggs also argues, in part, that the ALJ failed to explain how he weighed the testimony that Skaggs had been using a cane since February of 2008 and then he had back surgery. As to the latter testimony, the ALJ noted that Skaggs' back pain had been progressive and he was later found to have a disc herniation which required lumbar fusion in February 2008, and that since then he continued to have back pain and used a cane to ambulate. (R. at 19). The ALJ, however, properly determined that Skaggs needed to establish his disability on or prior to December 31, 2005. The ALJ made that clear during the hearing and also in his written decision.

As to Skaggs' testimony concerning his activities in 2005, the ALJ acknowledged that Skaggs testified that he had back pain since he was 25 years old, he worked from 2001 to 2004 as a self-employed auto repairman, landscaper and tree trimmer, but stopped working due to back pain and spent most of his time reclined in bed in 2005. (R. at 18). The ALJ noted that Skaggs said he could not afford more treatment but that in 2005 he saw Dr. Grief who prescribed pain medications and anti-depressants. (R. at 18-19).

The ALJ recited and discussed the relevant factors in weighing Skaggs' credibility, including the objective medical evidence, medical opinions of record, his daily activities, his pain medications and other measures he used to relieve pain. (R. at 18-19, citing Social Security Ruling 96-7p; 20 C.F.R. § 416.929). The ALJ concluded that Skaggs' allegations concerning the intensity, persistence and limiting effects of his symptoms were "not entirely credible." (R. at 19).

The ALJ found it significant that Skaggs denied taking pain medication or receiving physical therapy in 2005 and that the medical record reflected very limited treatment that year by Dr. Grief. (R. at 19). Skaggs reported back pain in July and September of 2005, but he had no further complaints of back pain to Dr. Grief until he reported generalized muscle aching in January 2007. *Id.* In November 2005, Skaggs described left foot plantar fasciitis, but not radiating back pain. *Id.* Skaggs saw Dr. Grief on only two occasions in 2006. *Id.*

The ALJ noted that Skaggs testified that he stopped working in 2004 due to worsening back pain but that he did not report specific back pain to Dr. Grief until July 14, 2005. (R. at 19). The ALJ also noted that earnings records reflected some limited earnings in 2007. *Id.* Skaggs reported to a physician in January 2007 that he was self-employed and he "works in landscape, auto repair, tree work and other activities." (R. at 19, citing R. at 352). When treated in the emergency room on January 31, 2007, Skaggs reported that he had been off work for only the last month. (R. at 19, citing R. at 412). The ALJ considered the level of activity reported by Skaggs, the objective findings prior to December 2005, x-rays and CT findings, the amount of pain medication prescribed at various times, the amount of physical therapy Skaggs received, the limited amount of treatment he received prior to December 2005, and the conflicting statements made by Skaggs. (R. at 19).

6

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). In this case, the court does not find the ALJ's credibility determination to be "patently wrong."

As noted, the court's role in this case is not to attempt a *de novo* determination of Skaggs' entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence, including the opinions of Dr. Grief, to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation and citation omitted). The ALJ's decision to limit Skaggs to light exertional work with occasional postural activity based on the record prior to December 31, 2005, is supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995) ("An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."); s*ee Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("[W]e give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it.") (internal quotation and citation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Skaggs' impairments, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Skaggs' application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Skaggs is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:   11/30/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana